CABRIA/, J.
I concur in the opinion, that all the deeds are fraudulent and void. Indeed, few cases have come within my observation, where the fraud was more foul, or more thinly covered.
Several important questions of law arise in the case of Lawrence v. Blow. The first of these relates to the amount of Blow’s recovery: whether it- is to be restricted to the sums which he actually paid, or shall extend to any farther sums, which, on a fair settlement of Davis’s accounts as guardian, shall be found due from his estate to his wards? This question can arise only as to the payments made to Young and his" wife, formerly Margaret Davis, and to Levy as administrator of his deceased wife, formerly Evelina Davis. For, as to the sum paid to the administrator of the other ward, that was established by a judgment, which must be admitted-to be conclusive.
As to the sum paid to Young and wife, Blow contends, that their assignment to him authorises him» to recover, not only the sum which he paid as the consideration of that assignment, but whatever sum Davis owed them. The deed from Young and wife to Blow contained an assignment to him, of all the right, demand &c. which Mrs. Young had against Blow or Davis’s estate on account of Davis’s guardianship of Mrs. Young, and a release to Blow, of all suits, actions and remedies whatever. This release extended, unquestionably, to the bond executed by Blow as surety for *Davis, and was in law, as it was in fact intended to be, an absolute discharge thereof, as to Blow. A release to one of two joint obligors, or to one of two joint and several obligors, is a release to the other. The bond is thereby discharged as to both, and no action can be sustained upon it. No body denies that this is so, in a court of law; and there is not an instance in any of the books, in which it has been held to be otherwise in a court of equity. The principle, that a release to one is a release to all, not less obligatory on courts of equity than on courts of law. The assignment to Blow of all the rights &c. of Mrs. Young cannot strengthen the case; for, by the release, the bond was functus officio; there was nothing left for the assignment ' to operate upon. And this would be equally the case, whether the assignment of a released bond, were made to a surety in the bond or to a stranger.
The payment made to Levy, cannot stand on more favourable ground; for, in tl at case, there was nothing more than absolute release.
The only ground on which Blow can recover, is the implied contract between principal and surety, that if the surety shall pay the money, the principal will pay it. On -this ground, he might have brought an action at law; and it is on this ground only, that he can be admitted in a court of equity, by substitution to the remedies of the creditors against the principal. But this ground will support a demand for nothing beyond' what he has actually paid,'and the interest upon it.
Another question is, whether the chancellor was right in decreeing the rents and profits of the land. It must be borne in mind, that this is a case in which no judgment or decree had been obtained against the debtor in his lifetime, or against his heir since his death. The suit is brought, me.rely on the bond of the ancestor, against his heir and alienee. There are many contradictory dicta, which would seem to bear on this subject; but there is no decision giving rents and profits under such circumstances. Nor do I think *such a decision would be consistent with the principles of the law. Until a creditor has obtained a judgment or decree, he has no lien on the land of his debtor, and, consequently, is not entitled to its possession, or to the profits of it. The decree, therefore, was wrong in giving the profits antecedent to the decree. And even if it were right to give the profits, it would be clearly wrong to give interest on those profits.
The chancellor has directed a sale of the lands, out and out; and a question is raised, whether this was proper; or whether he ought not to have left the party to his extent on the land, for paying the debt out of the rents and profits.
In the case of Stileman v. Ashdown, 2 Atk. 607; Ambler, 13, where a creditor, having obtained a judgment against his debtor, who afterwards made a fraudulent conveyance, and then died, came into a court of equity against the heir at law and fraudulent alienee, to set aside the conveyance, lord Hardwicke directed a sale of the moiety of the land: And it is believed that similar decrees are frequently made by the english chancellors. The decrees for a sale of the moi'ety of the land, in such cases proceed on the principle, that the creditor has, by his judgment, a lien on the moiety of the land for the payment of his debt out of the rents and profits; and the courts of equity, on the ground of rendering more effectual, accelerate the payment, by directing a sale, instead of levying the debt out of'the rents and profits. 2 Scho. & Lef. 139. The principle, which justifies a sale of the moiety of the land, in the cases just mentioned, applies, in all its force, to the case before us, and extends to the sale of the whole land. Blow, by his decree, acquired a lien on the whole land; and has, consequently, the same equity to demand a *257 sale of the whole, that the plaintiffs in Stileman v. Ashdown, had to demand a sale of the moiety.
In Blow v. Maynard, the opinion of the court was, that the bills of sale to slaves made by J. Davis to the appellee Eleanor Maynard, under dates of June 7, and September *19, 1807, were fraudulent and void as to his creditors; and that she is accountable for the slaves thereby conveyed, and the increase of the females of them, and their hires and profits accruing since his death, as executrix in her own wrong, in a like manner as a rightful executor would be accountable; and that the appellee, Elizabeth Eaw'rence, having been privy to the fraud, and having held and enjoyed the profits and produce of the property, so fraudulently conveyed, in common with E. Maj’nard, was in like manner responsible, jointly with her, except in relation to transactions in respect to the slaves, which occurred during her coverture with David Lawrence. Decree reversed with costs.
In Lawrence v. Blow, the court declared that Blow was entitled to recover against the defendants in this suit, only 4243 dollars 63 cents with interest on 3483 dollars 81 cents, the principal part thereof, from the 1st July 1825, that being the whole amount paid by him in satisfaction of the claims against him as surety for J. Davis in the guardian’s bond: that none of the defendants were responsible for the rents and profits of the real estate in the proceedings mentioned : and that the said decree was erroneous so far as it conflicted with the foregoing opinion, and no farther. Decree reversed with costs.